Haynes, J.
This is an action brought in the court of common pleas by the administratrix, to recover for the loss of the life of her- *623 son, who was a fireman in the employ of the Lake Shore Railway Company,and was engaged upon what was’known as the “Boston Special” upon this particular occasion,and his death occurred at a point on the line of that road about three miles this side of Holland station, and under this state of facts:
The Boston special was coming towards Toledo, at about half-past four, p. m., a January afternoon, about four years ago. It came down near a crossing called the Angola crossing when the engineer discovered some person standing near the track and making signals known as danger signals. He was in the act of blowing the whistle for a crossing situated about eighty rods east of the Angola crossing and immediately commenced to stop his train. Looking ahead, he could see, in the shades of the early evening, that there were some persons moving about the track and that there was some substance appearing to be upon the track, but he could not distinguish what it was. He applied his air-brakes and took all the methods known to engineers to stop his train and as he approached the last named crossing it could be seen ahead that there was a log across the track,and as they went on and got near to the crossing, the engineer being then in the act of reversing his engine and stopping it, the fireman, of his own accord, stepped back to the side and jumped from-the locomotive, and as he jumped, as it appeared after-wards from the result — he struck a crossing fence' — apparently struck a post in which there was a nail, and struck the nail, and was so injured that he died within a few minutes afterward.
The original action which was brought, set out for a cause of action that the engineer was negligent in that he failed to stop his train within the time in which he might have done so by the use of reasonable diligence, and that if he had used reasonable care and diligence he would have stopped the train prior tc the time that it arrived where the log was, or where the fireman jumped. Upon the trial of the case in the common pleas upon that petition, a judgment was rendered in favor of the plaintiff for a thousand dollars and against the railroad company; and, upon a motion made by the plaintiff in error here to the court of common pleas, the court set aside that verdict, for the reason, as appears from the records, which have been read in our presence, that there was nothing in the evidence in the case that showed that there was any negligence upon the part of the engineer; in short, that the engineer had acted like a prudent man,and had done all that he could do to stop his engine before it arrived at this crossing.
*624 Thereupon the ease rested some little time in the court of common pleas, but subsequenlty an amended petition was filed — I think nearly two years after the suit was brought— wherein, in addition to the original cause of action which was set up, it was alleged that at this particular point the road crossing was insufficient and defective,and that by reason of the character of the crossing, the log had become stalled upon the track — or, to set it out a little more fully— they claimed that Mr. Champion, who was cutting timber in Adams township, was dragging logs or timber, to a place where he cut it up, at Holland station, and that in doing so the usual and ordinary rule would be to cross this track, which was known as the. crossing of the old Maumee road. They claim that the railway at that point -was in the neighborhood of three feet above the natural level of the road; and it was claimed that the rise in the road-bed from the natural level of the road to the crossing of the railroad was steep, abrupt and defective, in that it was not level or even, being, as it was claimed, a ridge on one side, or a rise,and it was said that Champion in drawing this log was using wbat is called a lizzard, or an old-fashioned stone-boat, and across that stoue-boat was a rest rising about two feet above the road, and on that had been placed one of these timbers or logs, which was somewhere about thirty inches in diameter and perhaps forty-four feet long, and around it had been thrown a chain which fastened it to the boat, and the other end of the log was allowed to drag io the mud or snow. There were attached to it three pair of horses. When they approached this crossing they put on another pair, making four pair, or eight horses. They proceeded and the boat crossed the first track and had got over to the north track, and at that point the rise would bring the log to where it would touch the ground, or perhaps touched the rail itself of the south line of the track, that is to say, the south rail of it. At that point the weight of the log by its situation was held suspended and thereupon they added the other team, and pulled until the chain broke, leaving the boat under the log on the south side of the railroad and the north end of the log had got to be so that it was a little over the north track. It was not shown from the evidence what chain it was that broke, but we think it is manifest, taking all things together and some inference that may be drawn, that the chain was around the log and fastened the log to the boat, because one witness speaks of detaching the horses from the boat afterwards. Upon the breaking of this chain the boat *625 passed over to the north side of the tracks, leaving the log lying with the butt on the ground or on the south track, and the north end of the log being perhaps three or four feet across the north-bound track of the railroad. Mr. Champion knew that the train was expected soon, the Boston special to the east and without stopping evidently to see whether he could move the log arcuud or sling it around by hitching a team to it — for it was resting rather on a pivot— he came to the quick conclusion that it was his duty to proceed west along the railroad track and intercept the approaching train. And he proceeded until he' came to a point about eighty rods west to the Angola crossing where he stopped and when he saw the train approaching commenced to swing his hands to stop it. The engineer saw him and proceeded to stop the train. It will be observed that the engineer was standing upon the south side of the locomotive — the right hand side was his place and the east-bound track being northerly, it brought him with his right hand to the south track. The fireman was upon the opposite side. It has been suggested that the engineer did not see this man as soon as he ought or as soon as he should, but it should be observed that it was also the duty of the fireman to be on the look out for danger to see all persons who should hail the locomotive and give signals; but we think with the court below — for the testimony is substantially the same--that this engineer was not negligent. We think that be used all the resources at his command in a prompt and active manner to stop that train. We think the testimony shows that it was a very difficult thing to stop that train at the point where he was, between that point and the place where the log was lying. Indeed he did not stop this train. It came down and struck the log and sent it flying over into the ditch, breaking some of the spokes of the pilot but not otherwise injuring the locomotive, and the train stopped somewhere about two hundred feet beyond the crossing. He had been shown to be a/good engineer, and- the testimony of other engineers who were running the Boston express was taken showing that a stoppage could not have been made any sooner than it was. The testimony of some that were formerly engineers, but were rather super-annuated, was taken, showing that in their judgment the train might have stopped before it reached this point, but we think the jury were not authorized to base their verdict upon that testimony.
Now, coming to the state of the new petition, this amend *626 ment was made about two years afterwards, and while testimony is given in regard to the condition of the approaches, it substantially is given in regard to the condition of the approaches two years after this time. There was perhaps some general evidence in regard to the approaches before that time. Champion’s testimony is taken, and while he was the man who was drawing this log across and had control of it, he made no objection to the crossing, and did not testify on that subject.
Section 8324 Rev. Stat. provides that:
“A company or person having control or management of a railroad shall construct, or cause to be constructed and maintained * * * at every point where any public street, lane, or highway used by the public crosses such railroad, safe and sufficient crossings, ” etc.
Now, the theory of the counsel who argued this case in this court — and I may say argued it very fully and very ably and earnestly in behalf of the views which counsel entertained, was that these approaches should have been so constructed that while this log was being drawn (because they assume that Champion had a right to draw exactly in the manner in which it was drawn), when they came to this approach, as the boat passed over it and came to the other side, the approaches should have beeu so constructed that the log would not have rested upon the railroad track; because, it was argued and admitted, that when the log touched the south-bound track it came down and they were unable to draw it further, and thereupon it remained there. I do not think that this is proved by the evidence. I think that when there came a little strain upon the log and the horses were required to pull, that they in pulling raised the rear end and that the chain broke. There was no evidence to show what kind of a chain this was, a large or a small chain, that held the log, but is seems to have been insufficient for its purpose. But, coming to the theory of counsel, they, as I have said, claimed that when this log was being drawn in this manner the approaches should have been such that the log would have passed over them without this friction; in 3hort, the claim must be, though it was not said in so many words, but is the result of their argument and of their claim, that the approaches should have been built by the railroad company so far to the north and south of the crossing that there would have been practically no incline on the approaches; that they should have brought the approaches practically to a level with the railway crossing. We do not *627 think that that is a fair and just construction of the statute. We think that they had a right to make the inclines, and we think that the inclines were made by the railway company in a safe and sufficient manner for all the ordinary and regular purposes of travel. We thmk that there would have been no difficulty in regard to this log if these parties had taken a little pains to have performed their business in a careful and prudent manner. I do not know that they could have drawn the logs better if they had not been drawn top foremost, but to the members of this court it would seem so. "We are unable to say how that is. However, they had a log the butt of which was four inches at least thicker than the top, tapering, and considerably heavier at the butt, and when they come to balance it the butt end is ghng to weigh down the top, sled and all, and it would seem to us that as a matter of prudence, persons drawing that log should have put a sled under the rear end also, both for the purpose of ease in drawing and in sliding it up, so that when it went over this road there would have been no friction; and we think that if there has been any carelessness in this matter at all, it has been on the part of Champion — in the manner in which he got that log upon the track, and the manner m which he was driving and came there at that time. But, without passing upon that question, we are clearly of the opinion that there is not sufficient evidence to support either of the causes of action set forth in the petition. The judgment of the common pleas will therefore be reversed and the verdict set aside, and the case will be remanded to the court of common pleas for further proceedings.
E. D. Potter, Jr., for Plaintiff in Error.
L. Wachenheimer, for Defendant in Error.